CENTRAL TRUST CO. OF NEW YORK v. WORCESTER CYCLE MFG. CO. et al.

(Circuit Court, D. Connecticut. March 17, 1902.)

No. 927.

1. ATTACHMENT—DISSOLUTION BY APPOINTMENT OF RECEIVER—CONNECTICUT STATUTE.

The provision of the Connecticut statute (Pub. Acts 1895. p. 491) that attachments shall be dissolved by the appointment of a receiver for a corporation within 60 days is intended to apply only to general receivers of all the property of the corporation situated in the state for the purpose of protecting the creditors of the corporation generally, and the appointment in a suit to foreclose a mortgage given by a corporation of a receiver for the mortgaged property to protect the rights of the mortgagee therein does not have the effect of dissolving a prior attachment under such provisions.

2. RECEIVER IN FORECLOSURE SUIT—CONSTRUCTION OF ORDER APPOINTING.

An order appointing a receiver in a suit to foreclose a mortgage, although broad in its terms, and purporting to extend to all the property of the mortgagor which was claimed to be covered thereby, should not be construed to cover property not in fact included in the mortgage, so as to affect rights which were paramount to the mortgage.

3. ATTACHMENT—SURRENDER OF PROPERTY TO RECEIVER UNDER STIPULATION—EFFECT.

Where an attaching creditor surrenders the attached property to a receiver appointed in a suit against the debtor, who claims the same under a stipulation that such surrender shall be without prejudice to his legal rights, which is approved by the court, it does not operate to

terminate the attachment, but the possession of the receiver is his possession, as against all other claimants.

**4. SAME—FAILURE TO LEVY EXECUTION.**

Under the Connecticut statute (Gen. St. 1887, § 922) providing that an attaching creditor shall lose his rights if he fails to take out and levy an execution within 60 days after recovery of judgment unless such issue or levy is prevented or stayed by some legal proceeding, an attachment creditor who, prior to judgment, has surrendered the attached property to a receiver, under a stipulation and order of court that it should be without prejudice to his rights, and that in case the property should be sold by the receiver his rights should be transferred to the proceeds, does not lose his rights by failing to take out execution on his judgment within 60 days, since the possession of the receiver effectually prevented a levy.

**5. SAME—SURRENDER OF PROPERTY TO RECEIVER—PROTECTION OF RIGHTS UNDER STIPULATION.**

Where an attachment creditor, to avoid a conflict of authority, surrenders the property to a receiver of a federal court claiming adversely, under an order of court providing that his rights shall not thereby be prejudiced, the court will see that the provision of such order is carried out in good faith, and that he is paid from the property or its proceeds in case his priority of lien is established.

In Equity. Suit for foreclosure of mortgage. On motion to dismiss petition of attaching creditor.

Butler, Notman, Joline & Mynderse, for complainant.
C. Walter Artz, for receiver.
H. D. McBurney, for Thomas Towne.
Perkins & Jackson and Seymour C. Loomis, for trustee.
Watrous & Day, for special master.
Breed & Abbott, for J. Burnett Nash.

TOWNSEND, District Judge. The history of this case will be found in the various opinions filed on questions heretofore raised. 86 Fed. 35; 90 Fed. 584; 91 Fed. 212; 35 C. C. A. 547, 93 Fed. 712; 110 Fed. 491. This hearing was on motion to dismiss the petition of one Camille Weidenfeld, an accommodation indorser of the note of defendant held by J. Burnett Nash, who, as holder of said note, brought suit prior to the appointment of the receiver, and levied an attachment on the property of defendant, and who, on February 4, 1898, obtained judgment thereon against defendant. Afterwards, said Nash obtained judgment against said Weidenfeld as indorser of said note, and Weidenfeld paid the amount thereof to Nash, and is now the owner and holder of said note and the assignee of said judgment recovered against the defendant the Worcester Cycle Company.

Weidenfeld, therefore, became subrogated to all of the rights accruing to Nash in the various proceedings herein, and Nash now prosecutes said claims for the benefit of said Weidenfeld and as his trustee. Nash and Weidenfeld join in this petition, which is for an order for the payment to Nash, as such trustee, of certain moneys in the hands of the special master, and granting leave to Nash to issue execution against the property of defendant in possession of the receiver, and authorizing the sheriff to levy thereon and sell so much of the same as shall be sufficient to satisfy the balance of petitioner's attach-

ment claim, and for an order that, in case the proceeds from such sale shall be insufficient to pay such balance, said receiver shall pay the balance thereof, or, in case of dispute as to the facts alleged, the same may be referred to a master, and for general relief.

Goodrich, the trustee in insolvency, moves to dismiss said petition on the ground that "upon the facts stated in said petition the petitioner is not entitled to any relief, inasmuch as the said petitioner's attachment has been dissolved, and for that and other reasons the property now in the hands of the receiver is not subject to any attachment lien in favor of said Nash or anyone claiming under him."

The receiver herein, appointed on June 26, 1897, having claimed that his appointment dissolved two prior attachments, those of said Nash and one Towne, the property was turned over to him under a stipulation that this should be done without prejudice to any rights under said attachments, and that said rights should be afterwards determined by the court. Subsequently, by decree of this court, which, as to the personal property involved herein, was affirmed by the circuit court of appeals, it was determined that said personal property, as against the trustee in insolvency, was free from the lien of the mortgage, but subject to the rights, if any, of attaching creditors, which rights were reserved for future determination. Goodrich was appointed trustee in insolvency of defendant on November 5, 1897, by the Connecticut probate court, and, as already stated, Nash took judgment against defendant on his claim February 4, 1898.

The trustee, Goodrich, in support of the motion to dismiss, claims first that said attachments were dissolved by the appointment of the receiver, or of the trustee. The provisions of the Connecticut statute relied on by the trustee are as follows:

"The commencement of proceedings for the appointment of a receiver of a corporation or a copartnership shall dissolve all attachments and all levies of executions. not completed, made within sixty days next preceding, on the property of such corporation or copartnership; but if the property is subsequently taken from the receiver, so that it cannot be used for the benefit of the creditors of said corporation or said copartners, nor made subject to the orders of the court in the settlement of the affairs of said corporation or copartnership, or if the receivership shall be terminated by order of the court, pending the settlement of the affairs of the corporation or copartnership, said attachments and levies of execution shall revive, and the time from the commencement of such proceedings to the time when the receiver shall be dispossessed of the property, or the finding of the court that said property is not subject to the orders of said court, or when said trust shall be terminated. shall be excluded from the computation in determining the continuance of the lien created by such attachment; but the attaching or levying creditors shall be allowed the amount of their legal costs, accruing before the time of the appointment of a receiver, as a preferred claim against the estate of said corporation or copartnership, if their respective claims upon which the attachments are founded shall, **in whole or in part,** be allowed." Pub. Acts Conn. 1895, p. 491.

The bill filed by the bondholders was for the foreclosure of their mortgage, which purported to cover the real and personal property of the defendant, alleged that it was expedient that all of said mortgaged property should be placed in the possession and control of a receiver, and prayed for the appointment of such a receiver. The court appointed Smith receiver of the property of defendant, being the mort-

gaged property described in the bill of complaint. 86 Fed. 35, 35 C. C. A. 547, 93 Fed. 712.

Counsel for the trustee lays great stress on those portions of the order in which the receiver was directed, inter alia, to take possession of all the "above-described" property of the company, "and to wind up its affairs," and was authorized to conduct the prosecution or defense of any suit which will "be for the interest and rights of creditors interested therein." In view of these circumstances, counsel for the trustee says:

"The court had jurisdiction of the parties and of the bill, and had jurisdiction to make the order that it did make. The fact that afterwards it turned out that the statements of the bill were not true, and that the mortgage was invalid as to the personal property, does not affect the jurisdiction of the court in making the appointment and in giving the receiver the power and authority which it did give. It is true that the receiver ought to have been appointed only of the property legally covered by the mortgage, but the court appointed him a general receiver and gave him general powers to act for, and in place of, the corporation."

Upon the ex parte application it appeared that said mortgage purported to cover all property owned by said corporation at the date of the mortgage, and which might thereafter be acquired by it, and also its corporate franchise. It is not clear that the order as drawn embraced property not covered by the mortgage, as between mortgagor and mortgagee, and it should not be so construed as to affect rights which were paramount to said mortgage.

In Smith v. McCullough, 104 U. S. 25, 26 L. Ed. 637, in a mortgage foreclosure suit where a receiver was appointed, the supreme court said:

"Notwithstanding the broad terms of the order appointing him [the receiver], we are satisfied that the court had no purpose to appoint him receiver of any property except that covered by the mortgage."

As to the jurisdiction of a court under such a petition to empower a receiver to appropriate property not covered by the mortgage, the court of appeals in the Eighth circuit says:

"When a bill is filed to foreclose a mortgage, the court may, upon a proper showing, appoint a receiver to take into his possession and control the mortgaged property. But the jurisdiction possessed by a court of chancery to foreclose a mortgage and to appoint a receiver for the mortgaged property pending the foreclosure gives it no jurisdiction or power to seize or take into its custody or control, through a receiver or otherwise, property of the debtor which is not covered by the mortgage. Nor can the court in such a suit rightfully make any order that will prevent, hinder, or delay the other creditors of the mortgagor from subjecting property not included in the mortgage to the payment of their debts." Scott v. Trust Co.; 16 C. C. A. 358, 69 Fed. 17. See, also, United States Trust Co. v. New York, W. S. & B. R. Co., 101 N. Y. 478, 5 N. E. 316; Tyler v. Hamilton (C. C.) 62 Fed. 187.

The Connecticut courts have held that a receiver appointed under the provisions of the statutes of that state is like a trustee in insolvency, and holds all the property of the debtor for equal division among creditors, and is not in any sense a receiver such as is appointed pendente lite under the ordinary powers of a court of equity to preserve property pending the determination of a suit involving title to the property in dispute. Pond v. Cooke, 45 Conn. 126, 29 Am. Rep. 668; New Haven Wire Co. Cases, 57 Conn. 352, 18 Atl. 266, 5 L. R. A.

300; In re Waddell-Entz Co., 67 Conn. 324, 35 Atl. 257; In re E. S. Greeley & Co., 70 Conn. 494, 40 Atl. 233; In re Wilcox & Howe Co., 70 Conn. 220, 39 Atl. 163. The distinction between the two classes of receivers is recognized and stated in the text-books. Beach, Rec. Introduction, par. 3; High, Rec. pars. 313–357.

Inasmuch as at the time of the receiver's appointment the property in question was already in the custody of the law, subject to the determination of the rights of the parties in interest, and the facts now appearing were not before the court when it made the appointment, these questions may now be considered as though they had been raised upon the original application. It is clear that upon proof that said personal property was in the possession of attaching creditors the court would not have appointed a receiver thereof upon the application of holders of bonds under a mortgage which, as to said property, was subject to the lien of such attachment.

The provisions of the Connecticut statute, that attachments shall be dissolved by the appointment of a receiver for a corporation within 60 days, are intended to apply only to general receivers of all the property of a corporation situated in the state, appointed for the purpose of protecting the creditors of a corporation generally; and it is not intended that attachments shall be dissolved by the appointment of courts of equity of receivers of mortgaged property merely for the sake of protecting a mortgagee under an invalid mortgage.

Unless the appointment of a receiver in this action was of such a nature as to secure for the benefit of the general creditors such assets as a trustee in insolvency thus appointed would have held for their benefit, these attachments ought not to be held to be dissolved by such appointment.

That this receiver, appointed upon the application of the bond-holders, was not constituted either a statutory or equitable general receiver of the corporation, but merely a custodian of the mortgaged property, further appears from the whole history of this litigation. This court, in its original opinion, stated that Smith was appointed "receiver of the mortgaged property," and that these attaching creditors would be permitted a hearing as to the superiority of their rights over those of the mortgagee (86 Fed. 35); this trustee was permitted to intervene by the circuit court of appeals, upon the theory that he represented creditors whom the receiver did not represent; although this court refused to turn the property over to the trustee until the amount of these claims under the attachment was ascertained, it held the mortgage invalid as against them as to personalty situated in Connecticut (90 Fed. 584); and in the opinion of the circuit court of appeals Judge Lacombe stated that "a receiver of the property described in the bill was appointed," approved the foregoing ruling, and held that the appointment of the receiver did not affect the title or the ultimate right of possession. This attachment was not dissolved by the appointment of said receiver.

Under the Connecticut statute an attachment is dissolved by the appointment of a trustee in insolvency within 60 days after the

attachment. Counsel for the trustee contends that the attachment only continued until the taking possession by the receiver, and that, therefore, the property had not been under attachment for 60 days, although the trustee was appointed more than 60 days subsequent to the attachment. This claim is untenable. The possession of the receiver is the possession of the attaching creditor. If the attaching creditor had surrendered the property to the owner, this would have dissolved the attachment, but placing it in the hands of a third person under an agreement and order of court that such action should be without prejudice to his rights under the attachment, does not terminate the attachment, and the appointment of a trustee after 60 days from the attachment did not dissolve it. Nor does the decree of foreclosure cut off, as claimed by the counsel for the trustee, the rights of the attaching creditor. The property was allowed by him to go into the possession of the receiver under the pledge of the court that his action should be without prejudice, and the decree of the court should not be so construed as to violate said pledge.

Counsel for the trustee further contends that this Nash attachment has been lost because the time of its duration given it by statute after judgment rendered has expired. Counsel for Towne, the other attaching creditor, joins in this contention. The Connecticut statute pertinent to this question is as follows:

"No estate, which has been attached, shall be held to respond to the judgment obtained in the suit, either against the debtor or any other creditor, unless the judgment creditor shall take out an execution and have it levied on the personal estate attached, or demand made on the garnishee in cases of foreign attachment, within sixty days after final judgment, or levied on the real estate attached, and the same appraised, and the execution and proceedings thereon recorded within four months after such judgment; or if said goods or estate are encumbered by any prior attachment. unless the execution shall be so levied, within the respective times aforesaid, after such encumbrance is removed; excepting only in case of a foreign attachment against an executor, administrator, or trustee in insolvency, upon whom the demand shall be made within the times limited in sections 1261, 1262, and 1263. But in reckoning said periods within which the attaching creditor is so required to take out and levy execution, any time during which the issue or levy of an execution may be prevented or stayed by the pendency of a writ of error, or by an injunction or other legal stay of execution, shall be excluded from the computation." Gen. St. 1887, § 922.

On February 4, 1898, Nash took judgment for the amount of his claim. No execution has been taken thereon. The property on which the attachment was levied was surrendered to the receiver under a stipulation and order of court that such surrender should be without prejudice to the rights of the attaching creditors thereunder; that the present rights of said Nash and the said Towne to the said attached property shall, if the same be sold by the said receiver, be transferred to the proceeds of the said property in the hands of the said receiver, who shall hold the said proceeds subject to the said rights, and said property and its proceeds have since remained continuously in the possession of said receiver.

It is contended by counsel for the trustee that, even if such possession might originally have been such a stay as would have oper-

ated to prevent a levy of execution, the court, on November 23, 1898, ordered that it be turned over to the trustee, subject to the rights of attaching creditors. The court did not so order. The property remained in the possession of the receiver until the rights of the parties should be finally determined.

It is further suggested that Nash might have allowed the attachment to continue by delaying to take judgment. But a judgment was necessary in order to establish the validity and determine the amount of the claim, and to preserve the lien under said attachment in case of the dissolution of the corporation. If the corporation should be dissolved before entry of final judgment, the attachment lien would be lost. Morgan v. Association, 73 Conn. 151, 154, 46 Atl. 877. The property in question is in the custody of the receiver of the court under its original order, which has never been vacated or modified except as aforesaid. During the whole course of the proceedings the question as to the rights of the attaching creditors has been recognized, and the receiver has been treated as a custodian of the property under authority of the court. As was stated by the circuit court of appeals (35 C. C. A. 547, 93 Fed. 712):

"The property is taken by the court, and is put into the hands of its officer to hold for the benefit of 'whom it may concern.' He holds and manages it for the benefit of the party to whom the court may ultimately decide that it belongs. * * * The property is put into the hands of the receiver only to preserve it from harm, to secure its accretions, and to insure its delivery unimpaired to the successful litigant; but the custody of the receiver should not be held to make any change in the status of any litigant's title."

That such possession operates to prevent a levy of execution does not seem to be open to question. Smith, Rec. § 45; High, Rec. § 141; Wiswall v. Sampson, 14 How. 52, 14 L. Ed. 322.

In Woerishoffer v. Construction Co., 99 N. Y. 398, 2 N. E. 47, the question was whether the court below had had authority to forbid in its order appointing a receiver further interference, by levy and seizure on execution or attachment, with the property placed in his possession. It was held that not only had the court authority to make such restraining order, but that the mere appointment of a receiver operated ipso facto to restrain such interference. The court says:

"Both parties concede that the possession of the court must not be invaded; that its officer cannot be sued without its permission; and that he cannot be dispossessed except at the peril of a contempt. What then must needs be the effect of the order in this case? It commands nothing which was not already commanded: it forbids nothing which otherwise was permissible; it takes away no right or remedy which the appointment of the receiver had not already taken away. Its sole practical effect was to give notice of that appointment and the rights secured by it, and charge the specific creditor with a conscious and willful contempt if he assailed the possession of the court."

As was said by Judge Taft in Vance v. Manufacturing Co. (C. C.) 82 Fed. 251:

"The receiver agreed with the sheriff that his taking possession should not affect the validity of any lien which might have been created by the sheriff's levy and continued in force until the receiver's taking possession. The arrangement made by the sheriff and the temporary receiver is to be commended. It was a judicious compromise to avoid a conflict between

jurisdictions, and certainly this court will not permit the commendable spirit of confidence which the sheriff showed in the justice and equity of this court to be made a ground for depriving him or those whom he represented of the rights in the property which had been acquired and maintained by lawful levy and subsequent official custody. The finding of the master that the judgment creditors, by reason of these levies, acquired a priority of lien, is confirmed."

The present case is substantially similar. Good faith requires that the confidence reposed by the attaching creditor in the order of this court that his rights be preserved shall not prove to have been misplaced.

The motion to dismiss the petition is denied.